IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INGRID CREEL, on behalf of NC, | ) | CASE NO. 5:08 CV 339 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Ingrid Creel ("Creel"), on behalf of NC,[1] for children's supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that NC had severe impairments consisting of attention deficit hyperactivity disorder and post-traumatic stress disorder.[2] The ALJ determined, however, that these impairments individually or in combination did not meet, equal, or functionally

---

[1] Under Northern District of Ohio Local Civil Rule 8.1(a)(2), only the initials of minor children should be used.

[2] Transcript ("Tr.") at 24.

equal any of the listings in Appendix 1 of the regulations.[3] He decided, therefore, that NC was not under a disability.[4]

Creel asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Creel argues that substantial evidence does not support the ALJ's finding that NC had less than marked limitations in five of the six domains relevant to the functional equivalency analysis under the regulations. Further, she maintains that the ALJ improperly evaluated her (Creel's) credibility.

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

**Analysis**

**1.      Functional equivalency for children's supplemental security income claims**

Functional equivalency to a listing for purposes of a child's claim for supplemental security income is governed by 20 C.F.R. § 416.926a. Under the regulation, the inquiry is whether the impairment imposes an extreme or marked limitation in connection with six domains – acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for one's self, and health

---

[3] *Id.* at 25.

[4] *Id.*

and physical well-being.[5] If a claimant has an extreme limitation in one of these domains or a marked limitation in two domains, he or she is considered functionally equivalent to a listing and, therefore, disabled.[6]

In this case, the ALJ found that NC had a marked limitation with regard to attending and completing tasks, a less than marked limitation with regard to acquiring and using information and interacting and relating to others, and no limitation in the remaining domains, including health and physical well-being.

The dispute in this case centers upon the ALJ's finding with regard to the health and physical well-being domain. Creel submits that the evidence supports a marked limitation in that domain. If she is correct, NC would have marked limitations in two domains and would be considered functionally equivalent to a listing.

**2.      The health and physical well-being domain**

The health and physical well-being domain involves physical effects of impairments physical or mental upon the child. The regulation makes this clear by reference to "physical effects"[7] throughout the section relating to this domain.[8] The mental effects of physical or

---

[5] 20 C.F.R. § 416.926a(b)(1).

[6] 20 C.F.R. § 416.926a(d).

[7] Some examples of physical effects relevant to the inquiry under this domain are "generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain." 20 C.F.R. 416.926a(l)(1).

[8] 20 C.F.R. § 416.926a(l).

mental impairments are addressed by other domains such as acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself.

This is not to say that mental impairments do not factor into this domain. Specifically, the regulation recognizes that medications taken for physical or mental impairments may have physical effects that limit performance of activities.[9]

Counsel for Creel has pointed the Court to a recent Social Security Ruling, 09-8p,[10] as elaborating upon the weight to be given to mental impairments under this domain. I have carefully reviewed that ruling and conclude that nothing therein provides for consideration of mental impairments beyond the physical effects directly caused thereby or by medication administered for such impairments.

**3.     The degree of limitation in the health and physical well-being domain**

As the ALJ observed, the evidence shows that NC had no remarkable physical impairments.[11] When questioned during the oral argument in this case, counsel for Creel acknowledged that the issue here was not physical impairments but rather physical effects from mental impairments, particularly side effects of medication. From my review of the record, I can find no physical effects caused directly by NC's mental impairments.

---

[9] 20 C.F.R. § 416.926a(l)(2).

[10] Social Security Ruling ("SSR") 09-8p, Title XVI: Determining Childhood Disability, the Functional Equivalence Domain of "Health and Physical Well-Being," 74 Fed. Reg. 7524 (Feb. 17, 2009).

[11] Tr. at 18.

Therefore, the focus must be on side effects of medication, which the regulation identifies as relevant to evaluation under this domain.[12]

In this regard, I find particularly relevant the progress notes of G. Dean Timmons, M.D., NC's treating pediatric neurologist.[13] Dr. Timmons prescribed Adderall.[14] His records confirm that NC had no notable physical problems and contain no references to adverse side effects from the medication. He did from time to time adjust the dosage of Adderall,[15] but this appears to have been to address hyperactivity as the effects of the medication wore off.[16] This isolated reference does not provide a basis for finding physical effects of medication that would sustain a marked limitation.

The only other evidence concerning medications and the side effects thereof comes by way of the testimony of Creel in the hearing before the ALJ. She testified that NC did not do well on Adderall, that she was now on a generic version of Ritalin, and that she had behavior problems when the medication began to wear off.[17] This testimony is inconsistent with the records of Dr. Timmons, who noted that NC was doing well on Adderall. Further, I can find and have been pointed to no medical records evidencing that a physician ceased

---

[12] 20 C.F.R. § 416.929a(l)(2).

[13] Tr. at 170-84.

[14] *Id.* at 179, 184.

[15] *Id.* at 184.

[16] *Id.* at 174.

[17] *Id.* at 370-71.

Adderall and switched NC to Ritalin.  Based on my review of the record, I find substantial evidence supporting the ALJ's observations that Creel's testimony was inconsistent with treating records and was exaggerated.

In summary, I conclude that the ALJ's finding that NC did not have a marked limitation in the domain of health and physical well-being has the support of substantial evidence.

## Conclusion

Substantial evidence supports the finding of the Commissioner that NC had no disability.  Accordingly, the decision of the Commissioner denying NC children's supplemental security income is affirmed.

IT IS SO ORDERED.

Dated:  March 31, 2009    s/ William H. Baughman, Jr.
United States Magistrate Judge